Filed 5/21/21  P. v. Cortez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>ADRIAN NATHANIEL CORTEZ,<br><br>     Defendant and Appellant. | D077895<br><br><br><br>(Super. Ct. No. SCS189535) |

APPEAL from an order of the Superior Court of San Diego County, Gary G. Haehnle, Judge.  Reversed and remanded with directions.

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Alan L. Amann, and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

In July 2006, a jury convicted Adrian Nathaniel Cortez of first-degree murder (Pen. Code,[1] § 187, subd. (a)) and conspiracy to commit a crime (§ 182, subd. (a)(1)) for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). Cortez admitted a prior strike conviction (§ 667, subds. (b)-(i)). Cortez was sentenced to an indeterminate term of 76 years to life in prison.

In 2008, this court affirmed the convictions and remanded for resentencing. (*People v. Cortez et al.* (Oct. 2, 2008, D049716, D050592) [nonpub. opn.].)

In 2017, Cortez filed a petition for habeas corpus claiming instructional error under *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*). This court granted the petition, set aside the first-degree murder conviction and remanded the case with direction that Cortez could be retried for first degree murder on a theory other than natural and probable consequences. (*In re Cortez* (July 14, 2017, D071551) [nonpub. opn.].)

On remand, the prosecution accepted reduction of the conviction to second-degree murder instead of retrying the case.

In 2019, Cortez filed a pro. per. petition for resentencing under section 1170.95. The trial court appointed counsel, received briefing, and considered the record of conviction. Ultimately, the court denied the petition by written order. The court found the evidence recited in this court's original opinion demonstrated Cortez was a direct aider and abettor and therefore was not eligible for relief under section 1170.95.

Cortez filed a timely notice of appeal.

Cortez contends, and the Attorney General agrees, that the trial court engaged in impermissible factfinding at the initial prima facie phase of the petitioning process. Both parties contend we should reverse the trial court's

---

[1]     All further statutory references are to the Penal Code.

2

order and remand with directions to issue an order to show cause and conduct further proceedings as required by section 1170.95. After careful review of the record and consideration of the Attorney General's concession of error, we conclude the order should be reversed and the case remanded.

STATEMENT OF FACTS

The respondent's brief contains a recitation of facts taken from our 2008 opinion. (*People v. Cortez et al.*, *supra*, D049716, D050592.) We will include that statement for convenience.

A. *The People's Evidence*

1. *The Murder*

On October 16, 2004, Ignacio M. (Ignacio) was at a park in Chula Vista along with several friends and his brother, victim Arturo M. (Arturo). Arturo was a member of the Otay gang. At some point during the day, Arturo went to a nearby restaurant. Around the same time that Arturo was walking back from the restaurant to rejoin the group in the park, Fausto approached. Fausto began asking the people in the group, " 'Where are you from?' " Moments later, as Arturo approached the group, Fausto asked Arturo the same question. Arturo responded by saying, " 'Otay.' " Fausto then began shooting at Arturo with a gun. Ignacio ran for cover. Shortly thereafter, Ignacio saw Fausto leave the scene in a waiting car.

Arturo died as a result of the gunshot wounds he received. An autopsy revealed three gunshot wounds, two in Arturo's torso, and one in his arm. Police found a total of five shell casings from a .32–caliber gun within 15 feet of Arturo's body.

2. *Accomplice Testimony*

Varrio Chula Vista (VCV) gang members Raymond Pacheco and William Parra testified at trial. Pacheco testified that in October 2004, he

3

was a VCV gang member, as were Cortez, whom he knew as "Trusty," and Fausto, whom he knew as "Bullet." Cortez was the leader of the VCV gang. Pacheco stated that in the Fall of 2004, a member of the Otay gang—a rival gang to VCV—shot VCV gang member Benjamin "Rocky" Moreno. On October 16, 2004, several VCV gang members held a meeting at which this shooting was discussed. Cortez, Pacheco, Parra, Fausto, and Jacob Sowder were among the VCV gang members who attended the meeting. At the meeting, Cortez asked whether anyone would be willing to shoot an Otay gang member in retaliation for the shooting of Moreno, and Fausto and Sowder volunteered to do so. Parra agreed to drive. Cortez gave Fausto a gun. As the meeting disbanded, Fausto asked Pacheco if he wanted to go along with Fausto to the shooting. Pacheco responded in the affirmative.

Pacheco testified that he, Parra, Fausto, and Sowder left the meeting and got into Parra's car. Parra drove the group around looking for Otay gang members. When they saw several people standing around in a park, Parra parked the car. Pacheco saw Fausto get out of the car and approach the people who were standing in the park. Fausto spoke briefly to the people in the park. Pacheco then saw Fausto fire a gun at Arturo. Arturo fell to the ground, and Fausto fired more shots at Arturo while he was on the ground. Fausto ran back to Parra's car. Once in the car, Fausto said that he got "the guy from Otay."

Parra testified that on October 16, 2004 Cortez asked for volunteers to retaliate against the Otay gang for shooting Moreno. Parra stated that Cortez gave Fausto a gun, and that Fausto shot Arturo. Parra stated that he accompanied Cortez to Alec Pojas's house a few days after Arturo was shot. Cortez sold Pojas a gun that was similar in appearance to the gun that Parra had seen Cortez give to Fausto on the night Arturo was killed.

4

### 3. *Gang Evidence*

Sergeant Eric Thunberg of the Chula Vista Police Department testified as an expert on criminal street gangs. Sergeant Thunberg explained various aspects of gang culture, including the notion that gang members are expected to assist the gang in retaliating against anyone who shows disrespect for the gang. Sergeant Thunberg described the history of the VCV gang, noting that it was first documented as a gang in the 1970s. The Otay gang is a rival gang to the VCV gang. Sergeant Thunberg opined that the charged offenses were committed for the benefit of the VCV gang, to retaliate against Otay for its shooting of a VCV gang member.

### B. *The Defense*

Fausto testified at trial. He admitted that he was a VCV gang member and that he had shot Arturo. Fausto denied that there had been a meeting of VCV gang members on October 16, 2004 at which Cortez requested that VCV members retaliate against the Otay gang. Fausto claimed that on the evening in question, he had been planning to attend a party he had learned about from his friend, Karina Lopez. Parra drove Fausto, Pacheco and Sowder around, looking for the party. Fausto saw a group of people in the park and got out of the car to see if anyone in the group knew the location of the party. Fausto testified that Arturo came toward him in an aggressive manner while shouting Arturo's gang's name. Fausto stated that he shot Arturo because he believed Arturo was about to physically attack him.

Cortez's sister and brother-in-law testified that Cortez was living in Murietta, 60 miles north of Chula Vista, in the weeks preceding and following the killing. Cortez's sister testified that Cortez attended a family barbeque and babysat for a neighbor in Murietta on the day and evening of the killing.

C. *Rebuttal*

The People presented evidence that on September 15, 2004 a Chula Vista police officer stopped a car that he suspected had been involved in a different shooting incident. The car was registered to Moreno. Cortez and Moreno were in the car. During that contact with police, Cortez fled the scene.

## DISCUSSION

At the outset of this discussion, we note our Supreme Court has granted review in numerous cases arising under section 1170.95 as well as other cases under Senate Bill No. 1437. Eventually, the court will provide guidance to the trial and appellate courts on the proper approaches to resolving petitions for resentencing under section 1170.95. Pending such guidance, we will make our best efforts to resolve the cases before us.

### Legal Principles

When a trial court receives a petition under section 1170.95, the court may screen the petition to determine if the petitioner in ineligible for relief under the section as a matter of law. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 329, review granted Mar. 18, 2020, S260493; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1139-1140, review granted Mar. 18, 2020, S260598.)

The court's ability to determine a petitioner is ineligible for relief upon the initial filing is limited. The court may not engage in factfinding or make credibility decisions. It can only utilize readily available facts which clearly show the petitioner in not eligible as a matter of law. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 982.)

6

Analysis

Here, the parties agree the court erred in finding Cortez was a direct aider and abettor based on the review of our prior opinion. It is true there is some evidence recited which could support a finding of direct aiding and abetting by Cortez. However, it is also clear from our opinion in the habeas corpus proceeding, that one of the theories of the prosecution was that Cortez was liable for murder on a natural and probable consequences theory. We reversed the first-degree murder conviction for violation of the holding in *People v. Chiu, supra,* 59 Cal.4th 155. We remanded the case for retrial on a theory other than natural and probable consequences. Notably, the prosecution thereafter agreed to a second-degree murder plea. It is likely the theory underlying the new plea was that the natural and probable consequences of Cortez's action justified a second-degree murder conviction. In short, we find it is not possible at the initial stage of screening to resolve the petition as a matter of law.

We agree with the appellant and the Attorney General that the court's order must be reversed, and the case remanded to the trial court for further proceedings.

## DISPOSITION

The order denying Cortez's petition for resentencing under section 1170.95 is reversed. The case is remanded to the trial court for

7

further proceedings consistent with section 1170.95.  We express no opinion on the merits of the petition.

HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.



GUERRERO, J.